IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KATHY GIORDANO,<br><br>      Plaintiff,<br><br>vs.<br><br>PROVIDENCE HEALTH SYSTEM IN WASHINGTON; PROVIDENCE HEALTH SYSTEM GROUP INSURANCE PLAN,<br><br>      Defendants. | Case No. 3:08-cv-0219-RRB<br><br>**ORDER DISMISSING CASE** |

**I. MOTIONS PRESENTED**

Plaintiff filed a Complaint to enforce the terms of an ERISA plan under ERISA § 502(a)(1)(B) and for other equitable relief under 29 U.S.C. § 1132(a)(1) & (3) and (d)(2)[1]. Plaintiff seeks a decision from this Court that she is entitled to Long Term Disability benefits under the Plan, an award of benefits, and injunctive relief requiring each Defendant to undertake such action that is required to assure payment of the past due benefits, including continuation of those benefits. She also seeks costs,

---

[1] Docket 1.

ORDER DISMISSING CASE - 1
3:08-CV-0219-RRB

interest, and attorney's fees.[2] The administrative record has been lodged with the Court and the parties have filed briefing.[3] In addition, Defendants have filed a copy of the surveillance CD relied upon by Defendants in their denial of benefits.

The matters have been fully briefed and oral argument was not requested. The Court being fully advised, now enters the following order.

## II. BACKGROUND

The facts leading up to this appeal are generally undisputed. Kathy Giordano was a Resident Assistant at Providence's Mary Conrad Center (a nursing home) from July 1, 1998, until May 15, 2004, when she fell and was injured at work while assisting an Alzheimer patient. She has not worked since that date. Giordano received workers' compensation benefits for a period of time.[4] In January 2005, a determination was made that she had recovered from her back injury and that she no longer qualified for Workers' Compensation benefits.[5]

---

[2] Docket 1.

[3] Dockets 32, 36, 56, & 57.

[4] AR 830.

[5] AR 828, 830.

A Long Term Disability Plan was provided by her Employer, Providence Hospital.[6] Following the mandatory waiting period, LINA awarded Plaintiff full benefits under the Plan, which were paid monthly without interruption for two years, until November 11, 2006.[7] In addition, the Social Security Administration found Giordano disabled from all occupations for which she was suited from May 15, 2004, to April 19, 2006, and continuing.[8]

In May of 2006, LINA informed Giordano that an investigation was being conducted to determine her eligibility for benefits beyond November 22, 2006, since as of November 11, 24 months of benefits having been paid, the Plan's applicable definition of disability changed from an inability to perform her "own occupation" to "any occupation."[9] Giordano was invited to submit evidence in support of her claim and LINA sought information from the medical providers identified by Plaintiff.

LINA notified Plaintiff on November 22, 2006, that the record did not establish her to be unable to perform the requirements of other identified occupations for which she was qualified. Since

---

[6] The Plan's insurer, Life Insurance Company of America, is referred to as "LINA" throughout the briefing.

[7] AR 141.

[8] AR 208-212.

[9] AR 485.

she no longer met the Plan's definition of disability, her benefits were discontinued as of November 22, 2006.[10] LINA relied in part on a surveillance video taken of Plaintiff in July 2006, which LINA deemed revealed abilities inconsistent with information Plaintiff was providing to her treating physicians.

The denial letter gave Giordano 180 days to appeal the denial.[11] An appeal was filed, but was not included in the Administrative Record.[12] On April 24, 2007, LINA denied Giordano's appeal.[13] However, LINA offered Giordano another 180 days to appeal that denial, which she did.

Ultimately, Giordano's counsel submitted additional evidence, including a psychological report from ANP Gerteisen and the April 19, 2007, Social Security decision.[14] ANP Gerteisen indicated that Giordano had serious mental problems (bi-polar disorder with rapid cycling) and was hospitalized due to a medication overdose. Additional medical records from a psychiatrist indicated Giordano was diagnosed with bipolar disorder with mixed episodes and rapid

---

[10] AR 140, 476-78.

[11] AR 477.

[12] *See* Docket 36 at 8.

[13] AR 113-14.

[14] AR 124 & AR 208-212.

cycling.[15] On September 18, 2007, LINA again denied Giordano's appeal.[16] LINA's final denial indicated that a Board Certified Psychiatrist had reviewed all available records and determined that they did not support a mental illness disability from May 15, 2004, onward. Furthermore, the file was reviewed by a Board Certified Orthopedic Surgeon, who concluded that there were no physical limitations which would prevent Giordano from performing any occupation as of November 10, 2006.[17] The review concluded that the record reflected "subjective complaints which appear excessive with evidence of symptom magnification and secondary gain."[18] This appeal followed.

### III. STANDARD OF REVIEW

The parties disagree as to the appropriate standard of review. Typically, a denial of benefits challenged under § 1132(a)(1)(B) is reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[19]

---

[15] AR 41-43.

[16] AR 14-15.

[17] AR 14.

[18] AR 14.

[19] *Bendixen v. Standard Ins. Co.*, 185. F.3d 939, 942 (9th Cir. 1999) (citations omitted).

In that case, the court reviews the administrator's decision for "abuse of discretion," which is a more deferential standard.

Defendants argue that the Plan language confers discretionary authority on LINA in this case, and thus the Court should review LINA's benefits decisions under the abuse of discretion standard.[20] Plaintiff disputes that the LTD Plan contains sufficient language to warrant an abuse of discretion standard and that a *de novo* standard should be applied.[21] The Court concludes that the end result in this matter is the same under an abuse of discretion standard or under the stricter *de novo* standard. Accordingly, without resolving the parties' differences regarding the Plan language, this Court reviews *de novo.*

## IV. DISCUSSION

### A. Standard of Proof for Entitlement to Benefits

According to the Plan document in this case, the burden is on the claimant to demonstrate that she is entitled to benefits under the Plan, not on the Administrator to demonstrate that the claimant is not disabled.[22] Plaintiff was informed of this burden on numerous

---

[20] This analysis can be further complicated in the event of a conflict of interest. See *Abatie v. Alta Health & Life Ins. Co*, 458 F.3d 955 (9th Cir. 2006). Docket 32 at 19.

[21] Docket 57 at 2-3.

[22] AR 410 (He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before

ORDER DISMISSING CASE - 6
3:08-CV-0219-RRB

occasions.[23] The parties do not dispute that the Plaintiff carries the burden of proving that she suffered from an illness or injury which prevented her from being able to perform any occupation for which she was qualified, as of November 11, 2006.

**B. Additional Evidence**

Giordano seeks permission to provide additional evidence to the Court, to be reviewed with the Administrative Record.[24] She complains that she should be permitted to submit additional evidence, because the claims process denied her the opportunity to present evidence in response to the surveillance video.[25] She complains that LINA failed to advise her what kind of evidence she needed to support her claim, and that rebuttal of the surveillance tapes was impossible because LINA never provided copies of those tapes or asked for a reasonable explanation of what the tapes contained.

However, the parties agreed and the pretrial order allowed the parties until December 31, 2009, to file a motion to permit

---

benefits will be paid.)

[23] AR 35.

[24] Docket 36 at 24.

[25] Docket 36 at 20.

evidence beyond the Administrative Record.[26] No such motions were filed, nor did Plaintiff attempt to submit any additional evidence. The administrative record clearly indicates that Giordano's counsel was provided with a copy of the Surveillance CD on July 23, 2008, at the latest.[27] Giordano therefore had 18 months to meet the December 31, 2009, deadline for seeking to submit additional evidence. She did not. Her request six months after the deadline for permission to submit additional evidence, without a hint as to the nature of that evidence, is untimely and DENIED.

Nor is the Court persuaded by Giordano's argument that LINA failed to provide her with the surveillance evidence during the pendency of her appeals, or tell her during the appeals what type of evidence she needed to submit to rebut the surveillance videos. In *Kearney v. Standard Ins. Co.*,[28] the Claimant argued that the insurance company failed to comply with the notice provision of 29 C.F.R. § 2560.503-1(f)(3), because it did not tell him what additional material he needed to submit in order to perfect his claim. The Ninth Circuit found that "the argument is without force, because Kearney's claim did not fail because he failed to submit

---

[26] Docket nos. 14 & 15.

[27] AR 5.

[28] 175 F.3d 1084, (9th Cir. 1999).

needed evidence. It failed because [the insurance company], having considered all the evidence, concluded that it needed no more and that Mr. Kearney was not disabled."[29]

### C. The Social Security Decision

Giordano complains that LINA did not properly take into account the findings by the Social Security Administration that she was disabled. LINA disputes this allegation, arguing that the SSA determination was carefully considered and distinguished.[30] LINA suggests that the SSA did not have much of the information which LINA had, including any of the medical or other evidence developed after April 19, 2006, the date of the SSA decision. Specifically, the SSA lacked information regarding Plaintiff's symptom magnification and secondary gain motives, records of the inconsistent self-reported information provided to various medical practitioners, and the "stark visual evidence provided by the July 2006 surveillance video."[31]

Furthermore, the Ninth Circuit has long held that an SSA award is not binding on an administrator.[32] To bind an administrator to

---

[29] *Id. at 1091.*

[30] AR 116-117.

[31] Docket 32 at 23.

[32] *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285-86 (9th Cir. 1990); *Daic v. Hawaii Pacific Health Group Plan*

ORDER DISMISSING CASE - 9
3:08-CV-0219-RRB

the SSA determination of disability would strip fiduciaries of their administrative discretion. The SSA "test" for disability is not applicable to claims under the LINA Policy. In SSA cases, the agency is obligated to apply the "treating physician rule," which gives greater weight to a treating physician's opinions, unless rejected by specific substantial evidence in the record. The Supreme Court has confirmed that ERISA plan administrators, like LINA, have no such obligation:

> Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.[33]

In light of the foregoing, the Court finds no error with respect to the consideration of and ultimate disagreement with the SSA opinion regarding disability.

//

//

//

---

*for Employees of Hawaii Pacific Health*, 291 Fed. Appx. 19, 21 (9th Cir. 2008).

[33] *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003).

**D. The Administrative Record**

**1. The Paper Trail**

Giordano complains that LINA relied solely on paper reviews and never employed a physician to actually examine her.[34] She argues that the critical issue is not whether she needs a cane to get around, but whether she is capable of sustained standing, sitting, lifting, pushing, and pulling, as are expected of working persons with her level of education and experience.[35]

Defendant disputes that its review was strictly limited to a paper review. LINA points out that two Independent Medical Examinations were performed, one by Dr. Swanson and another by Dr. Gorenson. While the IME's were paid for by Workers' Compensation rather than by LINA, the examinations and questions addressed related directly to the issues which LINA needed to consider in November 2006.[36]

The Court has carefully reviewed the 1,084 page administrative record in performing its *de novo* review. Although it does contain several "paper reviews" by specialists who reviewed the record and offered opinions regarding Giordano's abilities, the record

---

[34] Docket 57 at 6.

[35] Docket 57 at 6.

[36] Docket 32 at 26.

ORDER DISMISSING CASE - 11
3:08-CV-0219-RRB

contains much more than mere paper reviews.[37] Furthermore, the denial letter dated November 22, 2006, specifically lists the information relied upon in concluding that Giordano did not meet the disability definition. The list included notes from her treating physicians, Dr. Martin, Dr. Voke, and Dr. Barnes, as well as two IMEs and one functional capacity evaluation - all of which involved personal contact with Giordano, not just "paper reviews."

Giordano was injured in May 2004. On June 1, 2004, treating physician Dr. Martin projected that Giordano would need to be off work for one to two months.[38] On October 1, 2004, he recommended she be off work for an additional two months.[39]

On July 22, 2004, Dr. Swanson, an orthopedic surgeon, performed an IME. Based on his examination, including a Waddell rotation test,[40] he concluded that Giordano exhibited evidence of

---

[37] The Court also notes that one of Giordano's primary treating physicians, Dr. Martin, was unavailable for comment when the paper reviews were performed. AR 78. He also declined to comment specifically on the video surveillance, although he acknowledged review of that video. AR 156.

[38] AR 903.

[39] AR 907.

[40] A Waddell's rotation test is a simulated rotation. There is no motion occurring in the lumbar spine, and this should produce no discomfort, as it did in Giordano. AR 378.

symptom magnification.[41] He agreed that her work injury caused some numbness, tingling and pain, but noted a great deal of difficulty assessing her because of her symptom magnification. Accordingly he recommended further diagnostic testing.[42] He noted that light housekeeping duties would probably help, rather than exacerbate, her back pain.[43] He projected a recovery period between six weeks and six months.[44]

Dr. Voke, a treating physician, deemed her unable to work until further notice on July 22, 2004, and on September 16, 2004, indicated she should not work for four more weeks.[45] But as early as November 2004, physicians (including Dr. Voke) began suggesting a work hardening program in an effort to return Giordano to gainful employment.[46]

On September 7, 2004, Dr. Swanson revisited his earlier IME report in conjunction with additional medical records, found no objective clinical evidence, and concluded that surgery was

---

[41] AR 378.

[42] AR. 379.

[43] AR 385.

[44] AR 858.

[45] AR 631, 635.

[46] AR 351, 162.

unwarranted. Furthermore, he noted "she has severe evidence of symptom magnification with probably secondary gain."[47] He suggested that psychological issues appeared to interfere with the evaluation. He further opined that her subjective complaints were likely due to a peripheral polyneuropathy due to her diabetes.

In November 2004, Giordano underwent a psychiatric examination by Dr. Eric Goranson. The examiner concluded that there was no evidence of any psychiatric problem related to her work injury. He noted that Giordano was getting narcotics from two different sources and suggested that there was evidence that points to a diagnosis of malingering.[48] Dr. Goranson discussed secondary gain issues, noting that Giordano rapidly began to demand from Dr. Martin certification for disability in the form of unnecessary accommodations such as a motorized cart and housecleaning services.[49]

A November 2, 2004, statement by Giordano indicated that she used a cart in the grocery store and that getting into the car was painful.[50] In a handwritten statement dated November 12, 2004,

---

[47] AR 815.

[48] AR 348.

[49] AR 350.

[50] AR 768.

Giordano clarified that she uses a cane, and when shopping she used "an electric cart."[51]

A January 12, 2005, IME, again performed by Dr. Swanson, resulted in a lengthy report that concluded that her work-related lumbar strain of May 15, 2004, was resolved, and that she exhibited symptom magnification with probable secondary gain.[52] His conclusions regarding symptom magnification (for the purpose of feigning disability) were discussed at length. He also indicated that multiple physicians were prescribing Percocet and that a pharmacy audit might be beneficial.[53] He opined that a physical capacity evaluation would not be fruitful, given the amount of symptom magnification she exhibited.[54] He concluded that although she was not able to return to her regular work as a CNA due to pre-existing spondylosis of the lumbosacral, there was no reason why she could not return to lighter duty work.[55]

On February 1, 2006, her treating physician, Dr. Martin, opined that she was unable to return to work, but also indicated

---

[51] AR 783

[52] AR 301.

[53] AR 303.

[54] AR 306.

[55] AR 307.

that none of his physical capacity conclusions were supported by objective findings.[56]

On July 24, 2006, Giordano appeared for a Physical Work Performance Evaluation Summary.[57] She left the FCE without completing it, exhibiting self-limiting behavior secondary to pain.[58] Later that day she was observed walking without apparent pain, and without assistance.  See *Surveillance Video*, below.

On November 10, 2006, Dr. Martin - her own treating physician - indicated that he did not know her true functional capacity.[59]

The Court observes that the Administrative Record is replete with inconsistent information provided by Plaintiff.  For example, she frequently reports a history of Lupus, although there are no records of treatment for this condition to be found. Interestingly, on her May 17, 2004, patient history form, she makes no mention of Lupus.[60]  The Court independently observed evidence

---

[56]   AR 614-615.

[57]   AR 254.

[58]   AR 255.

[59]   AR 985.

[60]   AR 876.

in the record that Giordano was obtaining Percocet prescriptions from more than one physician at a time.[61]

### 2. The Surveillance Video

At the request of LINA, a private investigator performed 21 hours and 25 minutes of surveillance of Giordano over a two day period, on July 24, 2006, and July 27, 2006. The report is found at AR 233-249. Defendant states that the activities memorialized in the surveillance video were made known prior to the initial termination of benefits in November 2006, yet at no point thereafter in either appeal did Plaintiff or her attorney or medical providers submit any evidence or argument to suggest that the surveillance video was inaccurately represented or that it inaccurately memorialized Plaintiff's physical abilities.[62]

Although there is some question as to precisely when Giordano first became aware of the surveillance video, as the Court observed previously, a copy of the video was provided to Plaintiff's counsel no later than July 23, 2008.[63] The time to present any rebuttal evidence has long passed.

---

[61] AR 291, 631, 688, 689, 743.

[62] Docket 32 at 25.

[63] AR 5.

The Court has reviewed the video and finds that the descriptions of the video in the administrative record are accurate. When Giordano "arrived at her doctor's appointment on July 24, 2006, she was using a support type of device in her right hand and was walking with a pronounced limp. When she arrived at other establishments, coffee shop and a fast food restaurant, she walked with a normal gait and no limp."[64] The Court also observed a lengthy shopping trip to Walmart during which Giordano bypassed use of the electronic carts in favor of pushing a shopping cart and engaged in lifting, reaching, bending, carrying, and even standing on one leg at one point.[65]

### 3. Conclusions

The Court finds that the opinions of Giordano and her doctors are insufficient by themselves to establish disability under the Plan requirements and case law. Treating physicians are more or less required to accept the representations of their patients, but LINA, as an ERISA administrator, is not obligated to do so. Given the contradictory medical evidence in the file, it was not an abuse of discretion for LINA to deny benefits. Even under the more strict *de novo* standard, this Court finds that upon a full review of the

---

[64] AR 68.

[65] *See also* AR 225-226.

paper record and the surveillance video, it is entirely reasonable to conclude that Giordano did not meet the definition of disability that was applicable following her first two years of LTD payments. Even her own treating physician, Dr. Martin, was unable to estimate her true functional capacity as of November 2006.[66] The evidence of malingering is overwhelming, from the failed Waddell's test to the surveillance tapes. The fact that Giordano may be mentally ill may explain her malingering behavior, but it does not excuse it. She is not disabled.

**E. Mental Illness Limitation**

In light of the foregoing conclusion, the Court need not address the Mental Illness limitation contained in the Plan. However, it is worth noting that on August 16, 2007, Dr. Jack Greener, a Board Certified Psychiatrist reviewing the Giordano case, had a conversation with Gabriele Gerteisen, ANP, who was currently treating Giordano for bipolar disorder.[67] Ms. Gerteisen had previously submitted a letter dated March 5, 2007, that indicated "due to the rapid cycling of her Bipolar disorder . . . Ms. Giordano is unable to work at this time."[68] However, on

---

[66] AR 985.

[67] AR 22.

[68] AR 124.

August 16, she stated that "she did not feel the claimant was psychiatrically disabled" and "she did not feel that the claimant's psychiatric disorder was in any way related to a work injury."[69] Any mental illness Giordano may suffer from is therefore irrelevant to this appeal.

**F. Denial of a Waiver of Life Insurance Premium**

Plaintiff appealed the denial of LTD benefits, but did not appeal the denial of the Waiver of Premium under the group life insurance policy. Having dropped her administrative appeal with regard to the Waiver of Premium under the group life insurance plan, and having never attempted to raise that issue during the current litigation, Plaintiff cannot now expand her claim to include issues for which no administrative record has been developed.

**V. CONCLUSION**

In light of the foregoing, Plaintiff's Complaint for relief is **DENIED** and this matter is **DISMISSED**.

**IT IS SO ORDERED.**

ENTERED this 21st day of September, 2010.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[69] AR 22.